IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WHITEHARDT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:15-cv-01307 |
| v. | ) | |
| | ) | JUDGE TRAUGER |
| GORDON J. MCKERNAN and GORDON | ) | |
| MCKERNAN INJURY ATTORNEYS, | ) | JURY DEMAND |
| LLC f/k/a THE MCKERNAN LAW | ) | |
| FIRM, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Whitehardt, Inc. ("Whitehardt") files this Amended Complaint against Gordon J. McKernan and Gordon McKernan Injury Attorneys, LLC f/k/a The McKernan Law Firm, PLLC (collectively, "Defendants") and states as follows:

### I.    PARTIES

1.    Whitehardt is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

2.    Gordon J. McKernan ("McKernan") is a citizen of the State of Louisiana.

3.    Gordon McKernan Injury Attorneys, LLC f/k/a The McKernan Law Firm, PLLC (the "McKernan Law Firm") is a Louisiana limited liability company with its principal place of business at 5656 Hilton Avenue, Baton Rouge, Louisiana 70808.

### II.    JURISDICTION AND VENUE

4.    This Court has jurisdiction over the copyright infringement claims and trademark claims pursuant to 28 U.S.C. § 1331 and 1338(a).    This Court has jurisdiction over the declaratory judgment claim pursuant to 28 U.S.C. § 1331, 1338(a) and 2201(a).  This Court has

Page - 1 - of 25

7/3799134.3

jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to claims asserted within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the McKernan Law Firm resides in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is also proper in this Court pursuant to 28 U.S.C. § 1400(a) because the Defendants reside or may be found in this District.

7. This Court has personal jurisdiction over the Defendants pursuant to Tennessee's long-arm statute because Whitehardt's causes of action arise from Defendants' transaction of business within Tennessee; Defendants' tortious acts and omissions resulted in damages in Tennessee; and Defendants entered into a contract for services to be rendered in Tennessee. The contract that is the subject of this action was entered into in Tennessee; conduct that constitutes a breach of contract was directed toward Whitehardt in Tennessee; Defendants traveled to Tennessee on multiple occasions to film the commercials and advertisements that Defendants unlawfully incorporated into their trademark applications; and Defendants directed conduct towards Tennessee by interfering with Whitehardt's business relationships, among other things.

7/3799134.3

## III. FACTUAL BACKGROUND

### A. Whitehardt's Business

8.      Whitehardt is a full-service advertising and consulting agency specializing in law firm advertisements.

9.      Whitehardt creates compelling, direct response branding and public service television advertisements that motivate potential clients to call and sign up with the attorney made the subject of the advertisement.

10.      Whitehardt strategically focuses an attorney's advertising dollars through expert media planning and negotiation, online and offline campaigns, and constant analysis, tracking and reporting.

### B. Whitehardt Provides Services to the Defendants

11.      On or about January 2008, Whitehardt and Defendants began discussing Whitehardt's capabilities to provide Defendants with advertising services.

12.      Whitehardt and Defendants ultimately agreed that Whitehardt would provide Defendants with advertising services.

13.      During the first quarter of 2008, Whitehardt conceived of an advertising campaign designed around the representation of litigants in tractor-trailer personal injury litigation.

14.      Whitehardt developed a campaign of advertisements and commercials known as the "Big Truck 15's" advertisements. The Big Truck 15's depicted McKernan standing next to a big truck.

15.      On or about April 25, 2008, McKernan traveled to Tennessee to film the Big Truck 15's commercials.

16.      Whitehardt's Big Truck 15's commercials began airing on or about May 14, 2008.

7/3799134.3

## C.     Whitehardt Conceives of the "Lawyer On The Truck" Advertising Campaign

17.     During the first quarter of 2010, Whitehardt conceived of an advertising campaign depicting a personal injury lawyer standing on the top of a tractor-trailer truck pitching legal services to potential clients.

18.     In or about March 2010, Whitehardt developed its first advertisements that would become known as the "Lawyer On The Truck" campaign or the "LOTT" campaign.

19.     On March 3, 2010, Whitehardt sent the Defendants scripts for commercials related to the LOTT campaign. **Exhibit A** (Mar. 3, 2010 email from Senese to McKernan).

20.     One day later, McKernan approved the concept stating, "I like the walking on top of the truck." **Exhibit B** (Mar. 4, 2010 email from McKernan to Senese).

21.     On March 15, 2010, McKernan reaffirmed his approval for Whitehardt's LOTT campaign stating, "I like walking for sure." **Exhibit C** (Mar. 15, 2010 email from McKernan to Senese).

22.     On March 18, 2010, McKernan traveled to Tennessee to film the first series of LOTT commercials.

23.     On March 29, 2010, Whitehardt finalized the LOTT commercials, which McKernan approved stating, "Launch it." **Exhibit D** (Mar. 30, 2010 email from McKernan to Morris).

24.     Whitehardt's LOTT commercials began running on or about April 5, 2010.

25.     Approximately two years later, in May 2012, Whitehardt wrote the second series of LOTT advertisements and provided McKernan with a copy of the scripts on June 5, 2012. **Exhibit E** (June 5, 2012 email from Stewart to McKernan).

7/3799134.3

26.     One week later, on or about June 13, 2012, McKernan traveled to Tennessee to film the second series of LOTT commercials.

27.     Whitehardt's second series of LOTT commercials began airing on or about July 30, 2012.

28.     On or about October 17, 2014, Whitehardt wrote the third series of LOTT advertisements and provided McKernan with a copy of the scripts. **Exhibit F** (Oct. 17, 2014 email from Popper to McKernan).

29.     Less than one month later, on or about November 4, 2014, McKernan traveled to Tennessee to film the third series of LOTT commercials.

30.     Whitehardt's third series of LOTT commercials began airing on or about February 2, 2015.

**D.     McKernan Praises Whitehardt's Contributions to Defendants' Business**

31.     McKernan has publically praised Whitehardt's contributions to Defendants' business on multiple occasions, including but not limited to praise on Whitehardt's website.

32.     McKernan stated that, as a result of Whitehardt's services, Defendants have achieved enough notoriety to be considered the "Number one player in [his market] over four or five years."

33.     McKernan also confirmed that Whitehardt has done "great creative" work for Defendants with "great media buys," but most importantly, McKernan acknowledged that Whitehardt's representatives are "trustworthy friends."

34.     McKernan further stated that Whitehardt has made commercials "that still make the phone ring" while "still maintain[ing] the dignity or respect of the bar and the people in [his] town."

7/3799134.3

35.     Most significantly, McKernan claimed that his "firm is more profitable, in no small part due to the efforts of [Whitehardt]."

E.     **Whitehardt's LOTT Copyrighted Works**

36.     "Big Truck B-Roll" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Big Truck B-Roll" script with the United States Copyright Office, as Registration Number TX 8-131-764.  As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script.  Whitehardt also registered the motion picture entitled "Big Truck B-Roll" with the United States Copyright Office, as Registration Number PA 1-942-166.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

37.     "Big Truck – Car" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Big Truck – Car" script with the United States Copyright Office, as Registration Number TX 8-131-766.  As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script.  Whitehardt also registered the motion picture entitled "Big Truck – Car" with the United States Copyright Office, as Registration Number PA 1-942-163.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

38.     "Big Truck – Little Truck" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Big Truck – Little Truck" script with the United States Copyright Office, as Registration Number TX 8-131-767.  As the deposit copy of the work, Whitehardt submitted a

7/3799134.3

digital copy of the commercial's script.  Whitehardt also registered the motion picture entitled "Big Truck – Little Truck" with the United States Copyright Office, as Registration Number PA 1-942-165.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

39.　　"Big Truck – Tiny Check" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Big Truck – Tiny Check" script with the United States Copyright Office, as Registration Number TX 8-131-781.  As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script.  Whitehardt also registered the motion picture entitled "Big Truck – Tiny Check" with the United States Copyright Office, as Registration Number PA 1-942-164.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

40.　　"Big Truck – 3 Trucks" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Big Truck – 3 Trucks" script with the United States Copyright Office, as Registration Number TX 8-131-777.  As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script.  Whitehardt also registered the motion picture entitled "Big Truck – 3 Trucks" with the United States Copyright Office, as Registration Number PA 1-947-877.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

41.　　"Fight the Big Fight Really Big" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Fight the Big Fight Really Big" script with the United States Copyright Office, as

7/3799134.3

Registration Number TX 7-898-867. As a deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. Whitehardt also registered the motion picture entitled "Fight the Big Fight Really Big" with the United States Copyright Office, as Registration Number PA 1-943-304. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

42. "Big Truck – Come Out On Top" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Big Truck – Come Out On Top" script with the United States Copyright Office, as Registration Number TX 7-899-168. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. Whitehardt also registered the motion picture entitled "Big Truck – Come Out On Top" with the United States Copyright Office, as Registration Number PA 1-943-356. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

43. "Big Truck – 3D Text" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Big Truck – 3D Text" script with the United States Copyright Office, as Registration Number TX 7-898-776. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. Whitehardt also registered the motion picture entitled "Big Truck – 3D Text" with the United States Copyright Office, as Registration Number PA 1-943-357. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

44. "Big Truck – Not Afraid" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work

7/3799134.3

entitled "Big Truck – Not Afraid" script with the United States Copyright Office, as Registration Number TX 7-898-777.  As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script.   Whitehardt also registered the motion picture entitled "Big Truck – Not Afraid" with the United States Copyright Office, as Registration Number PA 1-943-359.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

45.     "Big Truck – Top of Our Game" script and motion picture are original works created by employees of Whitehardt in the scope of their employment.  Whitehardt registered the work entitled "Big Truck – Top of Our Game" script with the United States Copyright Office, as Registration Number TX 7-898-778.  As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script.  On November 18, 2015, Whitehardt filed an application for registration of the motion picture entitled "Big Truck – Top of Our Game" with the United States Copyright Office.  As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video.

46.     "Big Truck B-Roll"; "Big Truck – Car"; "Big Truck – Little Truck"; "Big Truck – Tiny Check"; "Big Truck – 3 Trucks"; "Fight the Big Fight Really Big"; "Big Truck – Come Out On Top"; "Big Truck – 3D Text"; "Big Truck – Not Afraid"; and "Big Truck – Top of Our Game" registrations and application for registration shall be referred to herein as the "LOTT Copyrighted Works".  **Exhibit G** (Certificates of Registration and Application).

**F.     McKernan Has Actual Knowledge Whitehardt Utilizes Its LOTT Campaign With Other Whitehardt Clients**

47.     Whitehardt conceived of and developed the LOTT advertising campaign to be marketed, not only to Defendants, but to attorneys in jurisdictions that do not compete with Defendants.

48.     At least as of September 17, 2013, Defendants were aware that Whitehardt utilized the LOTT advertising campaign with other personal injury lawyers in additional jurisdictions, including but not limited to Ken Nugent in Atlanta, Georgia.  **Exhibit H** (Sept. 17, 2013 email from Senese to McKernan).

## G.     Defendants Infringe Whitehardt's LOTT Copyrighted Works

49.     Seven days after receiving the email referencing another attorney's use of the LOTT advertising campaign (**Exhibit H**), on September 24, 2013, Defendant McKernan Law Firm filed trademark/service mark U.S. App. Ser. No. 86/073,127, which registered on May 6, 2014 as U.S. Reg. No. 4,525,497 (the "'497 Mark").  **Exhibit I** ('497 Mark and Application).

50.     The '497 Mark consists of a portrait of McKernan standing on the hood of a truck.

51.     The '497 Mark artwork is not, in fact, an original work; but rather, it is substantially derived from Whitehardt's LOTT Copyrighted Works and Whitehardt's LOTT advertising campaign.

52.     On September 24, 2013, as a requirement to submit the application for the '497 Mark, Robert C. Tucker, McKernan Law Firm's attorney of record, signed a declaration stating, in part:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection

with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

**Exhibit I**, at p. 8.

53. On or about June 26, 2014, McKernan Law Firm filed trademark/service mark U.S. App. Ser. No. 86/320,949, which registered on February 3, 2015 as U.S. Reg. No. 4,681,608 (the "'608 Mark"). **Exhibit J** ('608 Mark and Application).

54. The '608 Mark consists of a figure of a man, McKernan, dressed in a suit standing on a tractor-trailer:



55. The '608 Mark artwork is not an original work. Rather, the '608 Mark is substantially derived from Whitehardt's LOTT Copyrighted Works and Whitehardt's LOTT advertising campaign.

7/3799134.3

56. In fact, to achieve successful registration of the '608 Mark, McKernan Law Firm submitted, as required specimen evidence, a still screen-shot of "Big Truck – Come Out On Top", one of the commercials Whitehardt developed during its LOTT advertising campaign:



**Exhibit J**, at p. 11.

57. On or about June 26, 2014, in connection with submitting the application for the '608 Mark, Pam Jones, McKernan Law Firm's Marketing Director, signed a declaration stating:

> The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Exhibit J**, at p. 8.

58. Since obtaining registration of the '497 and '608 Marks, the McKernan Law Firm has filed additional trademark applications substantially derived from the LOTT Copyrighted Works, including but not limited to U.S. App. Ser. Nos. 86/568,706 and 86/568,707.[1]

**H.      McKernan Interferes With Whitehardt's Business Relations**

59. During the last quarter of 2013, Whitehardt and Andy Citrin, an Alabama personal injury lawyer, began discussing Whitehardt's capabilities to provide advertising services to Citrin.

60. On or about November 12, 2013, Whitehardt and Citrin signed an Agency of Record agreement (the "AOR Agreement") whereby Citrin provided Whitehardt with the authority to represent Citrin in all media negotiations and placements.

61. The AOR Agreement further granted Citrin a license to Whitehardt's advertisements and prevented Citrin from reselling any of the ads made for Citrin.

62. Defendants had actual knowledge that Whitehardt was working with Citrin in November 2013 as McKernan provided advice to Citrin with respect to Citrin seeking the State Bar of Alabama's approval for certain advertisements.  **Exhibit K** (Nov. 15, 2013 email from Citrin to McKernan).

63. In connection with Whitehardt's representation of Citrin, Whitehardt authored advertisements for Citrin, including but not limited to various LOTT commercials.

64. On or about August 5, 2014, McKernan demanded Citrin execute a "Trademark License Agreement," where the McKernan Law Firm would purportedly grant a non-exclusive license to Citrin for the improperly obtained '497 Mark within the limited territories of Citrin's

---

[1] Whitehardt has filed oppositions in the United States Patent and Trademark Office with respect to Defendants' trademark applications.

Page **- 13 -** of **25**

law practice (Baldwin and Mobile counties in the State of Alabama). **Exhibit L** (Aug. 5, 2014 email from McKernan to Citrin, and "Trademark License Agreement").

65.     The "Trademark License Agreement" further purported to provide Defendants the ability to terminate the non-exclusive license, without cause, upon six months' notice.

66.     When Citrin did not sign the "Trademark License Agreement", McKernan followed-up on his demand on May 14, 2015 stating, "Andy, please email me your exact issues. We need to put this behind us. I don't have much room to give anymore. God bless." **Exhibit M** (May 14, 2015 email from McKernan to Citrin).

67.     On May 18, 2015, McKernan copied representatives of Whitehardt and threatened Citrin, saying that, if Citrin did not sign the "Trademark License Agreement," McKernan would have his lawyer send a "cease and desist letter." **Exhibit N** (May 18, 2015 email from McKernan to Citrin).

68.     Citrin responded to McKernan's May 18, 2015 email one day later stating, "I am just confused … I have an agreement from [McKernan] and **another one from [Whitehardt]**. I am getting mixed messages." **Exhibit N** (May 19, 2015 email from Citrin to McKernan) (emphasis added).

69.     In response to Citrin's May 19, 2015 email, McKernan further enticed Citrin to sign McKernan's "Trademark License Agreement" by promising to "split fees on all 18 wheelers." **Exhibit N** (May 19, 2015 email from McKernan to Citrin).

70.     On May 20, 2015, Citrin again expressed reservations to McKernan via email due to his existing agreement with Whitehardt. **Exhibit N** (May 20, 2015 email from Citrin to McKernan).

7/3799134.3

71.     In response to McKernan's demands, on May 21, 2015, Citrin expressed his frustration directly to Whitehardt via email stating, "I want to continue using Gordon style of boards and frankly need his input.  I haven't got any big truck cases lately.  I am getting buried by Shannarah."  **Exhibit O** (May 21, 2015 email from Citrin to White).

72.     McKernan was forcing Citrin, a Whitehardt's customer, to either accept McKernan's unlawful "Trademark License Agreement" or run the risk of litigation—even though Citrin already paid for a license from Whitehardt to lawfully use the LOTT Copyrighted Works.

73.     As a direct result of McKernan's tortious interference, Whitehardt's business has been damaged.  For example, Citrin is no longer using Whitehardt's services in multiple capacities, including without limitation for billboards or consulting services.

## I.  <u>Defendants' Willful, Continuing Copyright Infringement</u>

74.     As of May 22, 2015, Defendants were prohibited from using the LOTT Copyrighted Works and any derivatives thereof.[2]

75.     On June 25, 2015, Whitehardt, thru counsel, again informed counsel for the Defendants that the Defendants "[are and have] been prohibited from running any advertisement based on, including any derivation thereof, the [LOTT] Copyrighted Works as of [May 22, 2015].  **Exhibit P** (June 25, 2015 letter).

76.     Nevertheless, since May 22, 2015, and in willful violation of Whitehardt's copyrights, Defendants have improperly displayed the LOTT Copyrighted Works at least 9,674 times via television commercials.

---

[2] On May 22, 2015, Whitehardt filed a civil action in the Middle District of Tennessee against the Defendants styled *Whitehardt, Inc. v. Gordon J. McKernan et al*; Civil Action No. 3:15-cv-00583; In the United States Court for the Middle District of Tennessee, Nashville Division.  On September 15, 2015, Whitehardt filed a Notice of Dismissal Without Prejudice reserving its right to re-file.

77.     Since May 22, 2015, and as of the date of the filing of this action, Defendants are continuing to willfully violate Whitehardt's copyrights by displaying the LOTT Copyrighted Works on Defendants' website, YouTube channel and other various print outlets, including but not limited to on billboard advertisements.

78.     Defendants have also willfully violated Whitehardt's copyrights by improperly and without permission running additional, Whitehardt copyright protected advertisements. **Exhibit P** (June 25, 2015 letter).

79.     For example, Defendants have willfully violated Whitehardt's copyrights by running advertisements on or after August 25, 2015, including but not limited to Whitehardt's, "Rhyme II"[3], "Brick Wall"[4], "Professional"[5] and "90% Don't Get Cheated"[6] advertising campaigns.

---

[3] "Rhyme II" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Rhyme II Script" script with the United States Copyright Office, as Registration Number TX 8-131-308. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. On November 17, 2015, Whitehardt filed an application for registration of the motion picture entitled "Rhyme2" with the United States Copyright Office. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video. **Exhibit Q** ("Rhyme II" Text Registration and Motion Picture Application).

[4] "Brick Wall" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Brick Wall" script with the United States Copyright Office, as Registration Number TX 7-833-446. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. On November 16, 2015, Whitehardt filed an application for registration of the motion picture entitled "Brick Wall" with the United States Copyright Office. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video. **Exhibit R** ("Brick Wall" Text Registration and Motion Picture Application).

[5] "Professional" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Professional" script with the United States Copyright Office, as Registration Number TX 8-131-324. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. Whitehardt also registered the motion picture entitled "Professional" with the United States Copyright Office, as Registration Number PA 1-949-490. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video. **Exhibit S** ("Professional" Text and Motion Picture Registrations).

[6] "90% Don't Get Cheated" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "90%" script with the United States Copyright Office, as Registration Number TX 8-131-325. As the deposit copy of the work, Whitehardt submitted a digital

7/3799134.3

80.    Since August 25, 2015 and in willful violation of Whitehardt's copyrights, Defendants have improperly displayed "Rhyme II" at least 224 times, "Brick Wall" at least 1,459 times, "Professional" at least 367 times and "90% Don't Get Cheated" at least 512 times.

81.    Since August 25, 2015 and as of the date of the filing of this action, Defendants are continuing to willfully violate Whitehardt's copyrights by displaying Whitehardt's "Rhyme II", "Brick Wall", "Professional" and "90% Don't Get Cheated" on Defendants' website and YouTube channel.

82.    Defendants have willfully violated additional Whitehardt copyrights by running advertisements on or after November 20, 2015, including but not limited to Whitehardt's "Careless Driver 2"[7] and "Experience Wins"[8] advertising campaigns (the "LOTT Copyrighted Works" and the "Rhyme II", "Brick Wall", "Professional", "90% Don't Get Cheated", "Careless Driver 2" and "Experience Wins" copyrighted works shall be collectively referred to as the "Copyrighted Works").

---

copy of the commercial's script. Whitehardt also registered the motion picture entitled "90 Percent" with the United States Copyright Office, as Registration Number PA 1-972-616. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture, in the form of a digital video. **Exhibit T** ("90% Don't Get Cheated" Text and Motion Picture Registrations).

[7] "Carless Driver 2" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Careless Driver 2" script with the United States Copyright Office, as Registration Number TX 8-131-327. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. Whitehardt also registered the motion picture entitled "Careless Driver 2" with the United States Copyright Office, as Registration Number PA 1-950-787. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video. **Exhibit U** ("Careless Driver 2" Text and Motion Picture Registrations).

[8] "Experience Wins" script and motion picture are original works created by employees of Whitehardt in the scope of their employment. Whitehardt registered the work entitled "Experience Wins" script with the United States Copyright Office, as Registration Number TX 7-878-231. As the deposit copy of the work, Whitehardt submitted a digital copy of the commercial's script. On November 16, 2015, Whitehardt filed an application for registration of the motion picture entitled "Experience Wins" with the United States Copyright Office. As the deposit copy of the work, Whitehardt submitted a digital copy of the motion picture in the form of a digital video. **Exhibit V** ("Experience Wins" Text Registration and Motion Picture Application).

7/3799134.3

83.     Since November 20, 2015 and in willful violation of Whitehardt's copyrights, Defendants have improperly displayed "Careless Driver 2" and "Experience Wins" in advertisements, on Defendants' website and YouTube channel.

## IV.     CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT & DECLARATORY JUDGMENT

84.     Whitehardt adopts by reference the allegations set forth above.

85.     Whitehardt and Defendants have an enforceable oral contract with respect to Whitehardt providing advertising services to Defendants.

86.     As part and parcel of Whitehardt and Defendants' agreement, Defendants agreed that they would not, without Whitehardt's permission, use Whitehardt's creative products with respect to the advertising services Whitehardt provided, including but not limited to the advertising campaigns related to the Copyrighted Works.

87.     During the course of their relationship, Defendants knew Whitehardt used similar advertising campaigns with other attorneys in other jurisdictions.

88.     Nevertheless, Defendants used Whitehardt's LOTT advertising campaign and the LOTT Copyrighted Works, in violation of the contract with Whitehardt and without Whitehardt's permission, by incorporating Whitehardt's LOTT Copyrighted Works into the '497 and '608 Marks.  Defendants have also used Whitehardt's Copyrighted Works in violation of the contract with Whitehardt and without Whitehardt's permission.

89.     As a result of Defendants' actions, Whitehardt's ability to market its LOTT campaign has been harmed and Whitehardt is entitled to actual damages as a result.

90.     Pursuant to 28 U.S.C. § 2201, Whitehardt further seeks a declaratory judgment that Whitehardt (1) has lawfully terminated its agreement with Defendants due to Defendants prior breach of contract; (2) Defendants are prohibited from using Whitehardt's Copyrighted

Works; and (3) Defendants' accounts with Whitehardt are immediately due and payable to Whitehardt.

## COUNT II:  COPYRIGHT INFRINGEMENT

91.     Whitehardt adopts by reference the allegations set forth above.

92.     Whitehardt is the owner of the Copyrighted Works as described above.

93.     The Copyrighted Works are registered or have been applied for with the U.S. Copyright Office.

94.     Defendants' use of the Copyrighted Works is without the permission of Whitehardt.

95.     Defendants infringed the LOTT Copyrighted Works by copying and incorporating the LOTT Copyrighted Works and derivative works thereof, including but not limited to into Defendants' '497 and '608 Marks, which are substantially similar to and/or unauthorized derivatives of Whitehardt's LOTT Copyrighted Works.

96.     Defendants have also infringed Whitehardt's Copyrighted Works by copying and displaying those works and derivative works thereof in various advertisements without Whitehardt's permission.

97.     Defendants' actions of copyright infringement are willful, as evidenced by Defendants' use of screen shots of the LOTT Copyrighted Works in the specimens submitted by Defendants to support the application for the '608 Mark.

98.     Defendants' actions of copyright infringement are further willful, as evidenced by Defendants' refusal to cease and desist using Whitehardt's Copyrighted Works as described above.

7/3799134.3

99.     As a result of Defendants' willful infringement, Whitehardt is entitled to actual damages, profits, statutory damages, costs of court, reasonable attorneys' fees, injunctive relief and any other relief the Court deems proper.

## COUNT III:  FALSE OR FRAUDULENT REGISTRATIONS PURSUANT TO 15 U.S.C. § 1120 AND REQUEST FOR CANCELLATION OF TRADEMARKS PURSUANT TO 15 U.S.C. § 1119

100.    Whitehardt adopts by reference the allegations set forth above.

101.    Defendants have made false or fraudulent declarations or representations in connection with the applications for the '497 and '608 Marks.

102.    Defendants had knowledge or belief that such declarations or representations were false or fraudulent when Defendants submitted the applications for the '497 and '608 Marks.

103.    Specifically, Defendants had knowledge that others had rights superior to the Defendants.

104.    Defendants further had knowledge that their applications were likely to cause confusion.

105.    Additionally, Defendants falsely or fraudulently represented that Defendants were the owners of the marks sought to be registered, when in fact they were not the owners.

106.    Moreover, Defendants falsely or fraudulently represented that Defendants were using the marks sought to be registered in commerce when in fact Defendants were not using the marks in commerce.

107.    As a result of the conduct described above, Whitehardt has suffered damages proximately caused by Defendants' false or fraudulent declarations or representations in connection with the '497 and '608 Marks.  For example, Whitehardt's applications for trademark registrations have been rejected by the United States Patent and Trademark Office due to Defendants' '497 and '608 Marks, which were obtained by false or fraudulent means.

Additionally, Whitehardt's business has been damaged as Citrin is no longer using Whitehardt's services in multiple capacities, including without limitation for billboards or consulting services, due to Defendants' false or fraudulent registrations.

108.    Whitehardt asks this Court to cancel the '497 and '608 Marks pursuant to 15 U.S.C § 1119 and award damages to Whitehardt proximately caused by Defendants' false or fraudulent registrations pursuant to 15 U.S.C. § 1120.

## COUNT IV:  TORTIOUS INTERFERENCE

109.    Whitehardt adopts by reference the allegations set forth above.

110.    Since November 2013, McKernan has had actual knowledge that Citrin engaged Whitehardt to represent Citrin with respect to advertising services.

111.    McKernan had actual knowledge that Whitehardt was performing advertising services for Citrin in May 2015 when the interference occurred.

112.    Armed with this information, McKernan interfered with Whitehardt's relationship with Citrin and/or induced Citrin to breach or violate Citrin's agreement with Whitehardt.

113.    By virtue of the proposed "Trademark Licensing Agreement," McKernan forced Citrin to pay for a license to a fraudulently-obtained trademark when Citrin had already compensated Whitehardt for the LOTT advertising campaign used in Citrin's advertisements.

114.    As a direct result of McKernan's tortious interference, Whitehardt's business has been damaged.  For example, Citrin is no longer using Whitehardt's services in multiple capacities, including without limitation for billboards or consulting.

115.    As referenced in the communications described above, McKernan's actions constitute tortious interference, and Whitehardt is entitled to actual damages as a result.

7/3799134.3

## COUNT V: TENNESSEE COMMON LAW UNFAIR COMPETITION

116.     Whitehardt adopts by reference the allegations set forth above.

117.     As part and parcel of Whitehardt and Defendants' agreement, Defendants agreed that they would not, without Whitehardt's permission, use Whitehardt's creative products with respect to the advertising services Whitehardt provided, including but not limited to the campaigns related to the Copyrighted Works.

118.     Defendants knew Whitehardt used similar advertising with other attorneys in other jurisdictions.

119.     Defendants have passed off Defendants' services as that of Whitehardt's, incorporating Whitehardt's LOTT Copyrighted Works into the '497 and '608 Marks and then forcing Citrin to pay for a license with respect to those Marks.

120.     Defendants acted with an intent to deceive the public, including without limitation Citrin, as the source of the services offered.

121.     Additionally, Defendants have actually confused or deceived the public, including without limitation Citrin, as to the source or services offered.  Specifically, Defendants are attempting to force Whitehardt's customers, including Citrin, to pay for a license with respect to the '497 and '608 Marks.

122.      As a result of Defendants' actions described above, Whitehardt's ability to market its LOTT campaign has been harmed, Defendants are unfairly competing with Whitehardt, and Whitehardt is entitled to actual damages as a result.

## COUNT VI: TENNESSEE CONSUMER PROTECTION ACT

123.     Whitehardt adopts by reference the allegations set forth above.

124.     As described above, Defendants engaged in unfair or deceptive acts or practices affecting the conduct of trade or commerce within the meaning of the Tennessee Consumer

7/3799134.3

Protection Act by falsely passing off services and/or causing a likelihood of confusion or of misunderstanding as to services being offered.

125. As a direct, proximate and foreseeable result of Defendants' violations of the Tennessee Consumer Protection Act, Whitehardt has suffered and continues to suffer damage to its business.

126. Defendants' use or employment of unfair and deceptive acts or practices was a willful and knowing violation of the Tennessee Consumer Protection Act warranting an award to Whitehardt of three times the actual damages sustained by Whitehardt pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

127. Defendants' violations of the Tennessee Consumer Protection Act also warrants the award to Whitehardt of its reasonable attorney's fees and costs pursuant to Tenn. Code Ann. § 47-108-109(e)(1).

## JURY DEMAND

128. Whitehardt demands a trial by jury on all issues triable.

## V. PRAYER

Whitehardt respectfully requests that the Court:

A. Enter an injunction ordering that Defendants, as well as anyone acting in concert with Defendants, be enjoined and restrained from using any of Whitehardt's Copyrighted Works;

B. Award actual damages for Defendants' breach of contract;

C. Declare that Whitehardt (1) has lawfully terminated its agreement with Defendants due to Defendants prior breach of contract; (2) Defendants are prohibited from using Whitehardt's Copyrighted Works; and (3) Defendants' account with Whitehardt is immediately due and payable;

7/3799134.3

D.      Award damages for copyright infringement under 17 U.S.C. § 504;

E.      Award costs and attorney's fees pursuant to 17 U.S.C. § 505;

F.      Order cancellation of the '497 and '608 Marks pursuant to 15 U.S.C. § 1119;

G.      Award damages to Whitehardt pursuant to 15 U.S.C. § 1120;

H.      Award actual damages to Whitehardt for Defendants' tortious interference, unfair competition with Whitehardt and violations of the Tennessee Consumer Protection Act;

I.      Award three times the actual damages sustained by Whitehardt pursuant to Tenn. Code Ann. § 47-18-109(a)(3);

J.      Award Whitehardt its reasonable attorney's fees and costs pursuant to Tenn. Code Ann. § 47-108-109(e)(1);

K.      Grant a jury trial on all issues so triable;

L.      Award pre-judgment and post-judgment interest in the maximum amount permitted by law; and

M.      Award Whitehardt any and all other relief to which it appears entitled.

Respectfully submitted,

*s/ R. Brandon Bundren*
R. Brandon Bundren (No. 30985)
Phillip E. Walker (No. 021739)
Kristi Wilcox Arth (No. 30404)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
P: 615.244.2582
F: 615.252.6380
bbundren@babc.com
pwalker@babc.com
karth@babc.com

*Attorneys for Plaintiff Whitehardt, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on March 14, 2016, I electronically filed a copy of the **AMENDED COMPLAINT** with the Clerk of this Court using the Court's CM/ECF system which will automatically send notification of such filing to all counsel of record:

Philip M. Kirkpatrick (phil.kirkpatrick@arlaw.com)
ADAMS AND REESE LLP

Robert C. Tucker (rtucker@joneswalker.com)
Bernard F. Meroney (bmeroney@joneswalker.com)
Michael K. Leachman (mleachman@joneswalker.com)
Andrew S. Harris (aharris@joneswalker.com)
JONES WALKER LLP

*Attorneys for Defendants*

*s/ R. Brandon Bundren*
R. Brandon Bundren

7/3799134.3